UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                   PLAINTIFF

v.                                              CRIMINAL ACTION NO. 3:19-CR-49-CRS

AARON ESTERS                                                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for consideration of a motion of the defendant, Aaron Esters, *pro se*, seeking a reduction of his term of imprisonment due to poor health which has placed him in fear of serious illness or death from the COVID-19 virus (DN 46). Esters has also filed a supplement to his motion providing updated information. (DN 57).[1] The United States has responded and objected to the motion on grounds of failure to exhaust administrative remedies and also on the merits (DN 50). It also responded to the supplement, indicating that nothing therein changes its position with respect to the original motion. The United States has also filed 120 pages of medical records under seal. (DN 52).

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[2] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of

---

[1] Esters refiled his motion for compassionate relief (DN 53). He also moved again on the same grounds (DN 54). DN 54 is reproduced again with the Supplement (DN 57). The grounds remain the same, despite the duplicate filings.
[2] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[3] As of the date of this writing, there are 142,238,073 confirmed cases worldwide and 3,032,124 deaths; in the United States, there are 31,350,025 confirmed cases and 561,921 deaths.[4] Further elaboration concerning the seriousness of the COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons where outbreaks can yield catastrophic result is apparent. However, the developments in the fight against the coronavirus are rapidly evolving worldwide and we must address each inmate's situation individually in the context currently presented when considering requests for compassionate release. Suffice it to say that the Court addresses motions for compassionate release, and Esters' motion in particular here, with the gravity of the situation in mind.

Esters is serving a 70-month prison sentence after pleading guilty in 2019 to charges of possession with intent to distribute 50 grams or more of methamphetamine and possession of a firearm by a convicted felon. This was not his first narcotics or firearm conviction. Esters has an extensive criminal record ranging over eighteen years. He is incarcerated at the Federal Correctional Institution ("FCI") Beckley and is receiving medical care there.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18

---

[3] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.
[4] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited April 21, 2021).

U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Esters has stated that he "sent a formal request to the warden on 10/26/20 …See Ex. #1." DN 46, p. 1. He has attached a copy of this Inmate Request to Staff.  DN 46-1.  The United States indicates that it "consulted with staff at the Bureau of Prisons and verified that despite Esters' allegations in his motion that he filed a formal request with the warden on October 26, 2020, no such request has been received."  DN 50, p. 4.  With this dispute of fact, the Court will err in favor of the defendant and find that since more than thirty days elapsed between his purported request to the warden and Esters having received no response, he will be deemed to have exhausted his administrative remedies in accordance with what has come to be referred to as the "lapse of 30 days" provision contained in the statute. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison.").  While the BOP apparently disputes having received this request from Esters, he has submitted a copy of the form he claims to have submitted and we have no reason to doubt that he has attempted to exhaust.  The Court will not reject this fully briefed motion and attendant medical records only to have its disposition further delayed by further action by Esters in seeking to exhaust administrative remedies.

In *United States v. Bolze*, No. 3:09-CR-093-TAV-CCS-1, 2020 WL 6151561 (E.D.Tenn. Oct. 20, 2020), the district court noted that "reasonable minds may disagree as to whether a

3

motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden." *Id.* at *4. The court stated that "although the Sixth Circuit has yet to encounter the issue presented here, it implied it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden," *quoting Alam*, 960 F.3d at 834. Therefore, for purposes of this opinion, we will assume that Esters satisfied the exhaustion requirement of the First Step Act and address the substance of his motion.

Esters' motion for compassionate release will be denied for the following substantive reasons.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United*

5

*States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id.* We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his motion and supplement, Esters, 39 years old, described a number of health conditions he experienced prior to contracting COVID-19 including "chronic asthma, diebetic [sic] type 2, high blood pressure, skin disease, low immune system, plus obesity." DN 46, p. 1. He sought compassionate release due to fear that if he contracted the COVID-19 virus he would be "at heightened risk for death due to (COVID-19) my current health problems and the fact that it is impossible to practice 'social distancing and other prophylactic measures in a prison environment." *Id.* He stated that "Courts across the Country have granted release for these same conditions," and provided a number of legal citations. DN 46, p. 3. In the supplement, he states that he has now contracted and recovered from COVID-19, noting that he "got a wift [sic] of it and every [sic] since it messes with my breathing and it triggered off my asmoa [sic] so now I be wezzing [sic] and I cough everyday every [sic] since I got over the COVID-19…" DN 57, p. 1. He also states that he was offered the COVID-19 vaccine and declined to take it stating that "at the time people were dieing [sic] from the shot some peoples body not the same and I have a very Low Amune [sic] system I'm type 2 diabetic high blood pressure cronic asma [sic], and I'm a big person so things like that take a toll on me so I have to be very careful…" *Id.*

He continues to request compassionate release due to COVID-19 stating that "I'm asking for Emergecy [sic] Early release I don't want nothing to happen to me in the prison I can take care of my self better at home…" DN 57, p. 3.

We note first that Esters indicates that he has already contracted and recovered from COVID-19, despite his indication that he has some residual chronic cough and wheezing since being infected with the illness. DN 57, p. 1. Thus, it appears that Esters' basis for his request for compassionate release – to avoid contracting COVID-19 due to heightened risk for deadly adverse consequences – is now moot. In *United States v. Billings*, 2020 WL 4705285 at *5 (D. Colo. Aug. 13, 2020), a case in which an inmate with hypertension and obesity survived infection with COVID-19, the court noted that

> Of course, it is not yet known whether having been infected with the COVID-19 virus confers immunity from reinfection, although there is some evidence suggesting recovered individuals may have at least temporary immunity.[5] At this point, however, the possibility of reinfection, if not impossible, is strictly hypothetical. That uncertainty militates against an entitlement to compassionate release. *See United States v. Entz*, 2020 WL 3542862 at *3 (W.D. Wash. June 30, 2020)… Although some courts have found compelling circumstances where a defendant suffering from other comorbidities already had been infected with COVID, those decisions appear to have been prompted more by the courts' concern that the facility was unable to address the defendant's other medical

---

[5] The *Billings* court notes recent medical authority suggesting the development of antibodies in individuals who have been infected and recovered from COVID-19: *See, e.g.,* Dr. Robert D. Kirkcaldy, et al., *COVID-19 and Postinfection Immunity, Limited Evidence, Many Remaining Questions*, Journal of the American Medical Association 2245, 2246 (May 11, 2020) (available at: https://jamanetwork.com/journals/jama/fullarticle/2766097) ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least temporarily. However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking.") (last accessed August 11, 2020); Dr. Francis Collins, NIH Director's Blog, *Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies* (May 7, 2020) (available at: https://directorsblog.nih.gov/2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies/) ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long, these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection.") (last accessed August 11, 2020).) In addition, a recent study of 285 patients (and 790 individuals with whom they came in contact) from the Korea Centers for Disease Control and Prevention found that recovered COVID-19 patients who test positive again were not infectious. *See* healthline, *People Who Test Positive for COVID-19 After Recovering Aren't Infectious* (May 26, 2020) (available at: https://www.healthline.com/health-news/people-reinfected-with-covid-19-werent-infectious) (last accessed August 11, 2020).)
*United States v. Billings*, No. 19-CR-00099-REB, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020).

issues adequately. *See United States v. Bandrow*, 2020 WL 4050242 at \*3, \*6 & n.4 (E.D. Mich. July 20, 2020) (prison had been unable to address defendant's hematuria (the presence of blood in the urine, indicative of possible severe kidney disease) for more than six months); *United States v. Yellin*, 2020 WL 3488738 at \*3 (S.D. Cal. June 26, 2020) (76-year old inmate with multiple comorbidities unable to provide self-care under prison conditions); *United States v. McCall*, ___ F.Supp.3d ___, 2020 WL 2992197 at \*5-\*6 (M.D. Ala. June 4, 2020) (physician credibly testified that defendant's sickle cell disease made him especially vulnerable to risk of death from COVID and required close, regular monitoring which prison was unable to provide); *United States v. Sholler*, 445 F.Supp.3d 265, 2020 WL 2512416 at \*5 (N.D. Cal. May 15, 2020) (defendant who suffered from incurable, progressive illness was completely disabled and totally confined to a bed or chair). Mr. Billings's circumstances are not comparable. There is nothing in the record to indicate his hypertension is not controlled with adherence to his prescribed medical regimen, and numerous courts have found that a defendant's obesity or obesity plus hypertension do not in themselves present compelling reasons warranting compassionate release. *See e.g., United States v. Pohahau*, 2020 WL 4588522 at \*4 & n.5 (D. Haw. Aug. 7, 2020); *United States v. Wilfred*, 2020 WL 4365531 at \*5 (E.D. La. July 30, 2020); *United States v. Lavatai*, 2020 WL 4275258 at \*3 (D. Haw. July 24, 2020); *United States v. Gordon*, 2020 WL 3971013 at \*3 (E.D. Mich. July 14, 2020); *United States v. Whiteman*, 2020 WL 4284619 at \*1 (E.D. Pa. July 27, 2020); *United States v. Takewell*, 2020 WL 4043060 at \*3 (W.D. La. July 17, 2020); *United States v. Wax*, 2020 WL 3468219 at \*2-3 (D.N.J. June 25, 2020); *United States v. Reynolds*, 2020 WL 3266532 at \*4 (W.D. Wash. June 17, 2020).

The research since the court decided *United States v. Billings* further supports findings of the development of robust immunity after recovering from COVID-19 infection. https://www.washingtonpost.com/health/post-infection-coronavirus-immunity-usually-robust-after-8-months-study-shows/2021/01/07/d7d369a6-511a-11eb-b96e-0e54447b23a1_story.html *See also, United States v. Johnson*, No. 11-20493, 2021 WL 822495 (E.D.Mich. Mar. 4, 2021)(risk of reinfection before being vaccinated did not support finding of extraordinary and compelling reason warranting compassionate release, noting "This is because, in order to release Johnson presently, the Court "would need to speculate as to whether there is a medically recognized possibility of becoming re-infected with COVID-19, and if there is, whether he would

likely contract the disease once again." *United States v. Benson*, No. 03-80139, 2021 WL 527280, at *2 n.1 (E.D. Mich. Feb. 12, 2021)").

The medical records indicate that Esters was complaining of wheezing and shortness of breath prior to his contraction of COVID-19 and was prescribed an Albuteral inhaler for treatment of symptoms. It thus appears that the symptoms of which he now complains are a continuation of the asthmatic condition he experienced earlier. His supplement indicates that his infection with COVID-19 "messes with [his] breathing," it "triggered off my Asmoa," he is wheezing and he coughs every day "since I got over the COVID-19." DN 57, p. 1. There is no indication that his symptoms are unmanageable.

With regard to Esters' concern that he faces the potential for infection (or reinfection) with the COVID-19 virus in the facility, we note that as of this writing, the Bureau of Prisons website (https://www.bop.gov) reports only 1 case of COVID-19 among the 1,565 inmates at FCI Beckley. Further, 936 inmates and 191 staff have been fully vaccinated with the COVID-19 vaccine. Thus, while Esters himself declined to receive the vaccine, those with whom he must come in contact are taking steps to prevent any further occurrence of the coronavirus in the prison.

Esters has failed to articulate an extraordinary and compelling reason for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i) as the prevalence of COVID-19 at FCI Beckley and the attendant risks associated with exposure to the virus constitute the sole basis for his motion.

Esters' medical records evidence that his medical conditions are being actively monitored and treated. Esters' personal preference to manage his health conditions at home is not a valid ground for compassionate relief. Further, Esters does not contend, nor could he successfully, that his sentence should be reduced because he is in generally poor health. The Sentencing

Commission identified terminal illness, or a serious physical, medical, or mental condition that substantially diminishes the ability of the defendant to provide self-care while incarcerated, and which is terminal or an otherwise permanent condition as evidencing an "extraordinary and compelling" reason for a sentence reduction. While not directly applicable to a defendant's request for compassionate release, the severity of the impairments noted by the Commission to meet the "extraordinary and compelling" threshold suggests that something more than manageable, albeit serious, health conditions is required to clear this first hurdle. While he does have a number of serious health issues including type 2 diabetes, hypertension, and asthma, Esters has not alleged, nor do the medical records reflect, that he suffers from a condition or combination of conditions that leave him unable to manage his own self-care while incarcerated, nor is he suffering the type of terminal, debilitating illness that would constitute an extraordinary and compelling reason for compassionate release. Indeed, the sole reason he originally claimed he should be considered for compassionate release was that his medical conditions would increase his potential for an adverse outcome should he contract COVID-19. After contracting and recovering from COVID-19, he now contends that he should be released to attend to his otherwise medically manageable conditions at home. For this reason, we find that Esters' health conditions, alone or in combination, do not support a finding of an extraordinary and compelling reason for compassionate release.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Esters' crimes weigh against release as he poses a very real danger if released from custody. The Court agrees with the United States for a number of reasons.

Esters is a repeat drug trafficking offender with a long criminal history which includes, among other charges, trafficking in various drugs, weapons possession, and aggravated assault, spanning a period of 17 years. Esters pleaded guilty to possession with intent to distribute over 50 grams of methamphetamine and being a felon in possession of a firearm. He admitted to the underlying factual basis which included that he was found in possession of 449.3 grams of methamphetamine and a loaded Smith & Wesson revolver concealed in a shoe box in the bed of his pickup truck. He fled from law enforcement and caused a collision with another vehicle when he ran a red light while fleeing. DN 39, p. 4. At the time of the commission of the crimes in this case, Esters was on probation for a prior drug trafficking and weapons offense. DN 39, p. 10. Thus, the nature and circumstances of the offense as well as these aspects of the defendant's history and characteristics militate against a sentence reduction, as the danger posed to the community appears great.

Esters states that he has served more than half of his sentence. That does not appear to be true, as he has served approximately 25 months of a 70-month sentence at this time. Esters states that he is "sorry to the community and the Courts for what [he] did." DN 57, p. 3. The United States has indicated that Esters has had no disciplinary incidents since he began serving his sentence and he appears to have satisfactorily adjusted to prison life. DN 50, p. 2. Esters has not indicated that he has completed any programming while incarcerated, although he states that he is presently in RDAP. He has not furnished the Court with any documentation such as certificates of

completion or other prison records. Esters states that he has a place to live, a job "on hold" for him, and he will have insurance to cover his medical expenses. DN 46, p. 2.

The United States has not mentioned or addressed any of the information related by Esters, nor has it attempted to balance the sum total of information addressed to the §3553 factors. This is unhelpful, as this Court has repeatedly been advised by the United States Court of Appeals for the Sixth Circuit that post-sentence conduct is relevant to the Court's determination whether a reduction in sentence should be granted. *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)(thorough renewed consideration of the § 3553(a) factors is required; court correctly included post-sentencing behavior as part of that inquiry); *United States v. Williams*, 972 F.3d 815 (6th Cir. 2020)(reversed and remanded because the Court failed to mention the defendant's argument regarding his post-conviction conduct); *United States v. Jenkins*, No. 20-5512 (6th Cir. Feb. 4, 2021)(Remanded for failure of the district court to mention defendant's post-sentence conduct in its explanation of its decision). While it remains wholly within the Court's discretion whether and to what extent to reduce a sentence, the Sixth Circuit requires district courts to give a "complete review" to a motion for sentence reduction under the First Step Act.

We acknowledge such positive efforts at compliant behavior and find it laudable that Esters is motivated to take employment when he is released and to fund his healthcare needs. We note, too, that good conduct is expected and rewarded in the prison system and Esters has only served 25 months of a 70-month sentence – less than thirty-six percent of his sentence.

We will accept at face value Esters' representation that he is remorseful. However, it is very troubling that he was on probation at the time of the crimes committed in this case. Further, he was on probation for trafficking and weapons convictions. Additionally, he attempted to flee at

the time of his arrest. All of these factors indicate a complete disregard for the law and call into question his statement that he is taking full responsibility for his actions. DN 57, p. 3.

In imposing sentence, the § 3553(a) sentencing factors were thoroughly and carefully considered, including, among other things, the serious nature of the offenses which involved a large quantity of methamphetamine and possession of a loaded firearm, charges to which Esters pleaded guilty. This Court, guided by the Plea Agreement, found that a sentence of 70 months imprisonment was sufficient but not greater than necessary to promote respect for the law, to reflect the seriousness of the offense, to deter future criminal conduct, to protect the public, and to serve as just punishment for the offense. The United States has noted that under the presentence report, Esters' guidelines range was 151 to 188 months, based upon a total offense level of 31 and a criminal history category of IV. DN 39. Esters obtained a plea agreement to a term of imprisonment of 70 months and 5 years supervised release which is substantially below the guidelines range.

The Court has revisited these factors and finds nothing to call into question the initial determination of the appropriate sentence. The Court finds at this juncture, with the defendant having only served a portion of an already lenient sentence, that a reduction in sentence would undermine the carefully balanced sentencing factors which are served by the sentence imposed. The defendant's good conduct in prison and wake-up call to redirect his attentions away from drugs and toward a productive lawful occupation suggests the efficacy and appropriateness of the sentence. The Court finds no ground to justify any reduction in Esters' sentence.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion

of the defendant, Aaron Esters, for compassionate release (DNs 46, 53, 54. 57) is **DENIED.** The motion of the United States to file records under seal (DN 51) is **GRANTED.**

**IT IS SO ORDERED.**

May 13, 2021

cc: Counsel of Record
Aaron Esters
Reg. #19723-033
Federal Correctional Institution Beckley
P.O. Box 350
Beaver, WV 25813

Charles R. Simpson III, Senior Judge
United States District Court

14